

**IT IS ORDERED as set forth below:**

**Date: February 3, 2026**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **BRETT RAY PAVEL,** | : | CASE NO. **25-10740-PMB** |
| | : | |
| Debtor. | : | CHAPTER 7 |
| | : | |
| **ALL SOUTH FLOORING, LLC,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **25-1012** |
| **BRETT RAY PAVEL,** | : | |
| | : | |
| Defendant. | : | |

### ORDER GRANTING DEBTOR'S
### MOTION FOR JUDGMENT ON THE PLEADINGS

The Plaintiff herein, All South Flooring, LLC (the "Plaintiff"), commenced this Adversary

Proceeding (the "Adversary Proceeding") through the filing of a *Complaint Objecting to*

*Dischargeability Under 11 U.S.C. § 523* against the Debtor on August 22, 2025 (Docket No. 1)(the

"<u>Complaint</u>").   This matter is before the Court on the *Defendant's Motion for Judgment on the Pleadings* (Docket No. 11)(the "<u>Motion</u>") and *Defendant's Brief in Support of Motion for Judgment on the Pleadings* (Docket No. 12)(the "<u>Defendant's Brief</u>"), filed by the Debtor-Defendant Brett Ray Pavel (the "<u>Debtor</u>") on October 22, 2025.

The Plaintiff filed its *Response and Opposition to Defendant's Motion for Judgment on the Pleadings* with attached exhibits on October 31, 2025 (Docket No. 13)(the "<u>Plaintiff's Response</u>"). On November 14, 2025, the Debtor filed *Defendant's Reply to Plaintiff's Response and Opposition to Motion for Judgment on the Pleadings* (Docket No. 18)(the "<u>Debtor's Reply</u>").   Thereafter, the Plaintiff filed its *Sur-Response and Sur-Opposition to Defendant's Motion for Judgment on the Pleadings* on November 20, 2025 (Docket No. 19)(the "<u>Plaintiff's Sur-Response</u>").[1]

Since that time, the Plaintiff filed a *Motion to Extend Discovery Period* on December 2, 2025 (Docket No. 20), and a *No-Opposition Order Granting Motion to Extend Discovery Period* was entered on December 3, 2025 (Docket No. 21), extending discovery to and including January 30, 2026.   Based on a letter received in Chambers from Plaintiff's counsel dated December 10, 2025, the Court held a telephonic conference (the "<u>Conference</u>") regarding certain discovery disputes on December 17, 2025.   Thereafter, the Court entered a *Consent Order Tolling Discovery* on January 2, 2026 (Docket No. 27)(the "<u>Tolling Order</u>"), which provides that discovery is paused and tolled as of December 17, 2025 (subject to the continuation of certain specific matters), and shall recommence five (5) days after entry of a non-appealable order regarding the Motion.

---

[1] The Plaintiff did not ask for permission to file this last pleading, and the Court's Local Rules do not provide for a sur-reply.   *See* BLR 7007-1(d).   In fact, they caution against the filing of a reply as a routine practice.   Nevertheless, it has been considered to the extent appropriate.

## Standard of Review[2]

Under Federal Rule of Civil Procedure ("F.R.C.P.") 12(c), as applied herein through Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7012(b), "[g]ranting judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023). In addition, the court evaluates a motion for judgment on the pleadings using the same legal standard as used in assessing a motion to dismiss under FRCP 12(b)(6). *See Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F.Supp.3d 1324, 1327 (N.D. Ga. 2016). Accordingly, all material facts alleged in the non-moving party's pleadings are accepted as true, and those facts are viewed in the light most favorable to the non-moving party. *Thompson, supra*, 67 F.4th at 1305; *see also In re Curepoint, LLC*, 2024 WL 4355525, at *9 (Bankr. N.D. Ga. Sept. 30, 2024). The allegations must plausibly suggest that the claimant is entitled to relief on some viable legal basis, and the court is under no duty to accept legal conclusions stated as fact.[3]

## Factual Allegations

In its Complaint, the Plaintiff contends that the debt alleged to be owed by the Debtor to the Plaintiff for the purchase of flooring material from the Plaintiff by the Debtor's company, Commercial Flooring Solutions, LLC ("CFS"), should be excepted from discharge herein under

---

[2] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

[3] *See Sun Life Assurance Co. of Canada v. Imperial Prem. Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

11 U.S.C. § 523(a)(4).[4]   This claim for relief is based on allegations that the Debtor caused CFS

to commit violations of an alleged trust that in turn caused the Plaintiff to incur an economic loss

as a trust beneficiary for which the Debtor is personally liable.   The Plaintiff alleges that this

technical, express trust (the "Trust") was created in a Subcontract Agreement dated September 14,

2023 (the "Subcontract")[5] between W.R. Newman & Associates, Inc. as general contractor

("Newman") and CFS as a subcontractor in connection with a construction project (the "Hays

Farm Project").   Complaint, ¶ 38.   *See also* Complaint, ¶¶ 16 & 20.[6]   More specifically, the

Plaintiff alleges that:

> the Debtor intended to create a trust to receive and hold the payments made by
> Newman for the work on the Hays Farm Project, as a trust fund, to be applied first
> to the payment of the firms responsible for justifying such payments for the work,
> including Plaintiff as the main supplier of flooring materials, and to apply the
> payments from Newman in the manner set forth in the Trust.

Complaint, ¶ 54.   The Plaintiff cites Article 5 of the Subcontract in support of these allegations,

which it quotes in the Complaint in pertinent part as follows:

> **Payment Conditions.**   Subcontractor will receive and hold the payments made by
> Contractor for the Work as a trust fund to be applied first to the payment of the
> persons or firms responsible for justifying such payments for the Work including,
> but not limited to, laborers, suppliers of equipment and materials, and
> subcontractors of Subcontractor and all taxes and insurance applicable thereto; and
> Subcontractor will so apply the payments from Contractor.

---

[4] This provision states that debts "(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" are excepted from discharge.   11 U.S.C. § 523(a)(4).

[5] The Court further notes that the Subcontract does not appear to contain, nor have the parties asserted, any ambiguity such that reference beyond that document would be proper for purposes of contract interpretation.

[6] A copy of the Subcontract is attached to the Complaint at Exhibit A.   The Plaintiff further alleges that the Debtor was involved in negotiating and approved the Subcontract and that he had "final say" in how CFS used its funds. Complaint, ¶¶ 10-18.

4

Complaint, ¶ 20 (emphasis in Complaint).   The Plaintiff states that it was the main flooring supplier and materialman on the Hays Farm Project and is a beneficiary under the Trust. Complaint, ¶ 38.[7]

The Plaintiff alleges that CFS purchased flooring products from the Plaintiff, which the Plaintiff delivered.   CFS did not pay the Plaintiff for all these materials, for which the Plaintiff asserts a claim in the amount of $361,365.49.   Complaint, ¶¶ 21-24.   The Plaintiff alleges that the Debtor was involved in obtaining funds that were to have been used to pay this obligation through representations made in connection with the submission of waiver/release forms to Newman under the Subcontract.   Newman paid CFS up to $528,929, which included payment for payment applications that covered invoices from the Plaintiff (the "Funds").   Complaint, ¶¶ 25-32.   It is further alleged that the Debtor, as the person in control of CFS, knowingly and intentionally misdirected the Funds by improperly causing them to be used for CFS's operations, such as rent and payroll, and that through his actions, CFS only paid the Plaintiff a portion of what it was owed.   Complaint, ¶¶ 33-37.   The Plaintiff also alleges the Debtor used the Funds for his personal benefit in violation of the alleged Trust.   Complaint, ¶ 58.

The Plaintiff contends that, as a result, the Debtor has committed fraud and defalcation while acting in a fiduciary capacity, as well as embezzlement, and the debt owed to the Plaintiff created thereby should be excepted from discharge.   The Debtor allegedly held a fiduciary position in relation to the Plaintiff under the Trust when the Plaintiff's claim arose.   The Debtor

---

[7] The Debtor filed his *Amended Answer to Complaint* on September 24, 2025 (Docket No. 6) in which he denies the allegations in Paragraphs 20, 38, and 54, and the existence of a trust agreement.   Of course, the Plaintiff's well-pled allegations are accepted as true for purposes of ruling on the Motion.

directly participated in this allegedly improper activity by violating his trust duties with CFS through the intentional misadministration of the Trust and conversion of the Funds.   Complaint, ¶¶ 39-47.   Further, according to the Plaintiff, the Funds were rightfully in the possession of the Debtor when he misappropriated same for personal use or for some use other than that for which CFS was entrusted with the Funds.   This misappropriation allegedly occurred with fraudulent intent and through deceit by the Debtor.   Complaint, ¶¶ 48-50.[8]

## Discussion[9]

To establish a debt is nondischargeable for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4), it must be shown that the debtor, while acting as a fiduciary "in accordance with an express or technical trust that existed prior to the wrongful act, committed an act of fraud or defalcation."   *Auction Credit Enters., LLC v. Ferreira (In re Ferreira),* 608 B.R. 300, 304 (Bankr. N.D. Ga. 2019)(citation omitted).   A technical trust is defined as "'an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation,'" as distinguished from a constructive or resulting trust.   *Ferreira,*

---

[8] In the Plaintiff's Response (p.7), the Plaintiff further contends that the Debtor defrauded Newman by presenting false waiver/release documents and submitted false invoices on behalf of CFS.   The Plaintiff cites the Rule 2004 Examination Transcript of the Debtor's son, Garrison Pavel, from August 19, 2025, in support.   *See Notice of Filing of Original Transcript,* Docket No. 17 (filed on November 6, 2025).   These allegations do not appear in the Complaint.   As repeatedly stated by the Plaintiff's counsel during the Conference, the Plaintiff believes further discovery is needed regarding issues related to the Debtor's influence and control over the Funds, along with benefit received, fraudulent intent/dishonesty, and other disputes of fact.   *See also* Plaintiff's Response, pp. 8-9.   The absence of proper discovery responses on such questions is cited as a reason to deny the Debtor's Motion at this early stage of the litigation.   Plaintiff's Response, pp. 8 & 20; *see also* Tolling Order.   Of course, if as determined *infra* the language in the Subcontract is inadequate to create a technical trust for the purposes of 11 U.S.C. § 523(a)(4), then none of those issues are relevant.

[9] Based on the presumption under 11 U.S.C. § 727(b) that all debts are dischargeable, a party contending to the contrary under an exception to dischargeability bears the burden of proof and must establish its claim by a preponderance of the evidence.   *Grogan v. Garner,* 498 U.S. 279, 287-88, 291 (1991).

*supra*, quoting *Parker v. Ferland (In re Ferland)*, 2010 WL 2600588, at *3 (Bankr. M.D. Ga. June 21, 2010)(citation omitted); *see also Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006).

A fiduciary relationship under Section 523(a)(4) must be construed narrowly.   *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993)(citation omitted); *see also In re Stephens*, 2019 WL 1421170, *5 (Bankr. N.D. Ga. Mar. 27, 2019).   The test for determining whether the debtor's relationship with a creditor supports the conclusion that the debtor was acting in a "fiduciary capacity" is stated as follows:

> First, the relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary or beneficiaries. Second, the relationship must define sufficient trust-like duties imposed on the trustee with respect to the trust res and beneficiaries to create a "technical" trust, with the strongest indicia of a technical trust being the duty to segregate trust assets and the duty to refrain from using trust assets for a non-trust purpose. Third, the debtor must be acting in a fiduciary capacity before the act of fraud or defalcation creating the debt.

*Spring Valley Produce, Inc. v. Forrest (In re Forrest)*, 47 F.4th 1229, 1234 (11th Cir. 2022); *see also Roof Tech. Partners, LLC v. Queen (In re Queen)*, 2023 WL 2751228, at *4 (Bankr. N.D. Ga. Mar. 31, 2023).   Thus, to defend successfully against the Motion under this subsection, the Plaintiff must allege facts plausibly tending to show that: (1) the Debtor held a position as a fiduciary under a proper trust agreement for the benefit of the Plaintiff; (2) its claim arose during the time the Debtor was acting in this capacity; and (3) the Debtor's conduct rose to the level of fraud or a defalcation.   *See In re Stephens*, 2019 WL 1421170, at *5 (Bankr. N.D. Ga. Mar. 27, 2019), citing *Caitlin Energy, Inc. v. Rachel*, 527 B.R. 529, 540 (Bankr. N.D. Ga. 2015); *see also Ferriera, supra*, 608 B.R. at 304.

7

Embezzlement under Section 523(a)(4) is defined as the "'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *Matter of Storm*, 2024 WL 1318586, at *3 (Bankr. N.D. Ga. Mar. 27, 2024), quoting *Ga. Dep't Human Servs. v. Ngwangu (In re Ngwangu)*, 529 B.R. 358, 365 (Bankr. N.D. Ga. 2015); *see also Matter of Knight*, 621 B.R. 529, 537 (Bankr. N.D. Ga. 2020).   Embezzlement is demonstrated when it is shown that the debtor, acting with fraudulent intent, improperly used property of another that was legally in the debtor's possession.  *See Storm, supra, quoting In re Logan*, 2015 WL 4940041, at *7 (Bankr. N.D. Ga. July 1, 2015) and *In re McQuillin*, 509 B.R. 773, 785 (Bankr. D. Mass. 2014)(citation omitted); *see also Queen*, *supra*, 2023 WL 2751228, at *5.[10]   The term "embezzlement" is defined by federal common law for purposes of Section 523(a)(4).   *See Matter of Jimenez*, 608 B.R. 322, 329 (Bankr. M.D. Ga. 2019), citing *Fernandez v. Havana Gardens, LLC*, 562 F. App'x 854, 856 (11th Cir. 2014).[11]

In the Motion, the Debtor first argues that the Complaint does not state a proper claim for relief under the cited part of Section 523(a)(4) because the Subcontract fails to define sufficient trust-like duties necessary to create a technical trust as required under this discharge exception. Under the above-referenced legal standards, the Debtor maintains that the duties imposed by the Subcontract only required CFS to "receive and hold payments made by [the] Contractor

---

[10] In addition, "[f]raudulent intent may be determined from the facts and circumstances surrounding the act."  *In re Veneziano*, 615 B.R. 666, 677 (Bankr. D. Conn. 2020), as quoted in *Storm, supra*.

[11] "The Court notes that in order for the debt to be excepted from discharge, it is not necessary that the Debtor appropriated the money for his *personal* use, as a representative of a business that personally participates in wrongdoing on behalf of the business is personally liable therefor, and the resultant debts may be excepted from discharge in the representative's individual bankruptcy case."  *Matter of Favors*, 2017 WL 894424, at *2 n. 3 (Bankr. N.D. Ga. Mar. 6, 2017), citing *Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559–60 (11th Cir. 1987).

[Newman],"[12] but do not suggest any obligation to either segregate those payments or avoid using them for non-trust purposes.   Thus, they do not rise to the level of trust-like duties.   The mere reference to CFS' holding these payments "as a trust fund to be applied first to the payment of the persons or firms responsible for justifying such payments" based on the work as completed also does not convert the nature of a commercial relationship into one of an express trust simply because words such as 'trust fund' or 'fiduciary' are included.   *See Ferreira, supra,* 608 B.R. 300; *In re Ellis*, 310 B.R. 762, 764 (Bankr. W.D. Okla. 2004)("'Fiduciary capacity' in § 523(a)(4) is intentionally narrow so that it does not apply to ordinary commercial relationships such as a debtor-creditor relationship.")

In support of the sufficiency of its allegations,[13] the Plaintiff cites *In re Brandt*, 594 B.R. 829 (Bankr. S.D. Fla. 2019) and *In re Frederick*, 2012 WL 465857 (Bankr. N.D. Ala. Feb. 13, 2012).   Consistent with the analysis in *Brandt*, the Plaintiff insists that it has alleged adequate facts to plausibly claim that the parties intended to and did establish an express trust.   The reasons offered here include that the Subcontract provides for the creation of a trust corpus or *res* through receipt of the Funds.    Further, the Subcontract evidences an intent to create a fiduciary relationship with respect to same based on its identification of the recipients entitled to be paid from those Funds and the preferential order of payment to which intended recipients were entitled based on services and materials provided on the Hays Farm Project.    Here, the Plaintiff seeks to

---

[12] *See* Exhibit A to Complaint.

[13] Among other things, in the Debtor's Reply, he objects to the Plaintiff's attempt to introduce new factual allegation into this Adversary Proceeding through its various attachments to the Plaintiff's Response.   The Court declines to treat this Motion as one for summary judgment based on the Plaintiff's attempt to include documents and material outside the pleadings.   *See* Plaintiff's Sur-Response, pp. 7-10.

distinguish *Ferriera, supra*, cited by the Debtor, on grounds that the agreement in question in that case did not mandate to whom the funds were to be remitted.   By contrast, the Subcontract in this case specifically provides that the Funds are "to be applied first to the payment" of laborers', suppliers', and materialmen's claims.

On review, although the Plaintiff points out that *Ferriera* involved floor plan lender agreement as opposed to a construction contract, it does not explain why this factual difference is significant.[14]   The reasoning in *Ferriera* is generally well-founded in its insistence on analyzing whether the features of an express trust are actually present and not relying solely on contract language denominating the parties' arrangement regarding distribution of related proceeds as such. 608 B.R. at 305; *see also Forrest, supra*, 47 F.4th at 1241 (courts must be wary of labels used); *Storm, supra*, 2024 WL 1318586, at *4 (substance of the transaction controls).[15]   The fact that the Subcontract provides for paying certain entities first is a contractual duty but does not rise to the level of a fiduciary duty imposed under a technical trust as that legal term is strictly defined for purposes of Section 523(a)(4).   *See Ferriera, supra*, 608 B.R. at 305 (citations omitted).

As set forth in the Complaint, the allegations do not state that the Funds were required to be segregated, that they, in fact, were set apart, or that records were made pertaining to the

---

[14] In a similar vein, it is not material to this Court's analysis of fiduciary capacity using the test set forth in *Forrest, supra*, that the facts in that case concerned a statutory PACA trust.   The dispositive question there was whether the PACA trust qualified for treatment under Section 523(a)(4), such that the test it adopted under that subsection determined the outcome.   In other words, although the court was considering a statutory trust, the test it set forth is generally applicable to any asserted trust arrangement on which alleged fiduciary capacity is alleged under Section 523(a)(4).   This understanding is also important because although bankruptcy courts may consult state law on statutorily created trusts, such as those that impose an agency relationship, federal law with its more stringent test controls.

[15] Contrary to the Plaintiff's suggestion, the court in *Storm* did address the issue of whether the debtor in that case was sufficiently acting in the capacity of a fiduciary for purposes of Section 523(a)(4).

maintenance of such separation.    Nor it is alleged that CFS was obliged to pay the exact funds as

received and held from Newman to be paid to a specified recipient—only that parties' "justifying

payment" should be paid first from the Funds.    Further, even though, as the Plaintiff notes, the

Eleventh Circuit in *Forrest* did not say segregation of funds is always necessary,[16] still the court

recognized the "important" role such a factor plays in any substantive analysis into whether a

debtor was acting in a fiduciary capacity.    *Forrest, supra*, 47 F.4th at 1240-41.[17]

   The Debtor argues that the case authority cited by the Plaintiff is also not persuasive

because those courts did not apply an analysis like that set forth in *Forrest*.[18]   For instance, in

*Developers, supra*, the court used a more limited test in evaluating the contract language at issue,

in that it did not appear to consider whether the alleged trust provision was supported by sufficient

trust-like duties as defined in the controlling agreement.[19]   Another reason that *Developers* does

not countenance a different ruling here is that in that case, the court recognized that a surety may

enforce its right over trust funds in an indemnity agreement.   The language there also explicitly

constrained use of the alleged trust assets by the indemnitors for a designated purpose and no other.

---

[16] This discussion occurs in connection with the court's examination of its prior ruling in *Quaif, supra*, 4 F.3d at 954.

[17] *See also In re Cross*, 666 F.2d 873, 876 (5th Cir. Unit B 1982), cited in *Forrest, supra*, 47 F.4th at 1239 (finding no trust in construction contract lacking segregation of funds requirement).

[18] Both *Developers* and *Frederick* preceded *Forrest, supra*.

[19]  The court found that the contract language demonstrated establishment of a corpus and an intent to create a fiduciary relationship, focusing on the restricted use placed upon any held proceeds, but apparently did not consider the full scope of any attendant duties that *Forrest* seems to require, such as a duty to segregate proceeds from other monies received.   *Developers, supra*, 979 F.Supp.2d at 1311-12, 1318.

979 F.Supp.2d at 1312.[20]    Similarly, in finding that a trust provision in an indemnity agreement did create an express trust, the court in *Frederick, supra*, quoted language that upon demand, withdrawals of funds deposited into a trust account may be conditioned on the "express consent" of the bonding company and so qualified as a trust under Alabama law.[21]    2012 WL 465857, at *1, *5-*6.    The Subcontract in the present case does not contain such provisions.

For all the above reasons, the Complaint does not plead sufficient facts to establish a claim that the Debtor acted in a fiduciary capacity based on an express trust created by contract under Section 523(a)(4) because the language of the Subcontract does not adequately create such a trust by imposing sufficient trust-like duties.

Next, the Debtor also contends that the Plaintiff does not allege adequate facts to support a plausible claim that the indebtedness at issue was created through embezzlement by the Debtor. In response to the allegation that the Debtor was rightfully in possession of the Funds and appropriated their use for an improper purpose with fraudulent intent (Complaint, ¶ 49), the Debtor insists that the Subcontract did not grant the Plaintiff a property interest in the Funds, and that the Plaintiff did not entrust property to the Debtor in his capacity as an officer of CFS.    Instead, the Plaintiff is merely owed a debt on a contract.    Moreover, allegations that the Debtor simply failed to pay the Plaintiff with the Funds are not sufficient to support a claim that he acted with fraudulent

---

[20] In *Brandt, supra*, which cites *Developers*, the court followed *Quaif, supra*, in stating that segregation is only needed in the case of a statutory trust.    594 B.R. at 832.    As noted above, the Eleventh Circuit has offered a more nuanced and broader view of this requirement in *Forrest, supra*.

[21] The agreement in that case also stated that the funds received by the indemnitor "shall be held in trust as trust funds," which is indicative of a mandatory requirement as opposed to more permissive language.    2012 WL 465857, at *6. The Debtor argues that since the Subcontract used the term "will," as in "will receive and hold" and "will so apply the payments," a more accommodating restriction was intended and employed with respect to the Funds.

intent.  *See Storm, supra*, 2024 WL 1318586, at *3; Complaint, ¶¶ 33-36.  Legal conclusions (*i.e.* fraudulent intent) are not facts, and alleged failure to pay without more is not enough to make out a plausible claim for embezzlement.[22]

In reply, the Plaintiff contends that as a trust beneficiary, it did have a recognizable equitable interest in the Funds.  Further, under the terms of the Subcontract, the right to be paid from the Funds constitutes a sufficient property interest for the purposes of "embezzlement" as used in Section 523(a)(4).  Here, the Plaintiff also adds that circumstantial evidence may be probative of alleged fraudulent intent.  *Queen*, *supra*, 2023 WL 2751228, at *5.[23]

To present a proper claim for embezzlement, the Plaintiff must be able to show that the property allegedly embezzled (the Funds) constituted its property.  *In re Cuenant*, 339 B.R. 262, 277 (Bankr. M.D. Fla. 2006).  There is no allegation that the Debtor was not in lawful possession of the Funds.  Further, as a legal matter, the Plaintiff's legitimate expectation under the Subcontract that it would be paid from the Funds as a matter of contract did not grant the Plaintiff an ownership interest in them nor did its rights under the Subcontract defeat the Debtor's ownership interest.  CFS may have breached its duties under the Subcontract.  Since the Funds received by the Debtor belonged to the Debtor and were not property of the Plaintiff, however, the debt here could not be one for embezzlement under Section 523(a)(4).  *See First Nat'l Bank of*

---

[22] Under F.R.B.P. 7009, which applies F.R.C.P. 9(b) to adversary proceedings, a party may plead intent generally.

[23] Plaintiff states that "[c]ircumstantial evidence, concealment of evidence by defendant, and a lack of consistency or credibility in defendant's testimony can be indicative of fraudulent intent."  *In re Corona*, 657 B.R. 554, 565 (Bankr. N.D. Ga. 2024)(citation omitted).  Of course, at this stage, the Court is only considering whether sufficient facts have been pled to make out a claim.  Further, if the Plaintiff has no interest in the Funds, as the Court herein finds, the intent of the Debtor is irrelevant.

*Fayetteville, Arkansas v. Phillips (In re Phillips),* 882 F.2d 302, 304–305 (8th Cir.1989); In *re Heath*, 114 B.R. 310, 311–12 (Bankr. N.D. Ga. 1990).[24]

Moreover, as discussed above, there is no provision in the Subcontract requiring the Debtor to segregate the Funds, thus the Court is not inclined to find that the Funds were property of the Plaintiff under an express trust. Even if the facts as pled do support an allegation that the Debtor used the Funds for a purpose other than the reason they were entrusted to CFS and that same occurred with the intent to defraud, still they do not support the Plaintiff's claim to ownership of the Funds. *See In re Camp*, 514 B.R. 917, 924–25 (Bankr. N.D. Ga. 2014); *Cuenant, supra*, 339 B.R. at 277.[25] Because the Funds were not the Plaintiff's property, the Plaintiff has not sufficiently put forth a claim of nondischargeability on the basis that the Debtor embezzled the Funds under Section 523(a)(4). *See In re Tomlinson*, 220 B.R. 134, 136 (Bankr. M.D. Fla. 1998).

---

[24] Against the Debtor's position, the Plaintiff argues that it is not necessary to plead that the restrictive trust requirements of Section 523(a)(4) must be satisfied to establish fiduciary capacity for purposes of claiming embezzlement. Plaintiff's Sur-Reply, p. 5. Instead, it is sufficient if the allegations, as here, meet the more general requirements of a trust and show the existence of a beneficial or equitable interest. Cases holding that it is not necessary to show "acting in a fiduciary capacity" under the federal standard for purposes of making a proper claim for embezzlement, however, are merely affirming that under the language of the statute, fiduciary capacity does not qualify the embezzlement or larceny provisions. All this means is that the Plaintiff still must allege facts showing that it had a sufficient ownership interest in the Funds such that the Debtor as a nonowner of the Funds, improperly converted or deprived the Plaintiff of its property after it had been entrusted to the Debtor's care. In addition, "[w]here the parties' conduct indicates a debtor-creditor relation, funds that come into the hands of the debtor belong to him and his subsequent use of them is not embezzlement." *Matter of Storms*, 28 B.R. 761, 765 (Bankr. E.D. N.C. 1983). Moreover, "[s]tanding to bring an embezzlement claim under § 523(a)(4) requires that the plaintiff own the allegedly embezzled property." *In re Corona*, 657 B.R. 554, 566 (Bankr. N.D. Ga. 2024).

[25] The existence of Plaintiff's ownership rights is critical. *See Jimenez, supra*, 608 B.R. at 329 (Bankr. M.D. Ga. 2019)(citations omitted)("creditor's security interest in property owned by the debtor is not a sufficient ownership interest to support an embezzlement claim.") Further, it may have been the case here that CFS was entitled to retain a reasonable amount of the Funds for itself as profit so that every dollar received was not necessarily dedicated to the Plaintiff. *See generally In re Heilman*, 241 B.R. 137, 171 (Bankr. D. Md. 1999). In addition, as contemplated under the Subcontract, other claims were also to be paid from the payments made by Newman to the Debtor so the Plaintiff had no claim to 'specific' funds separate and apart from other creditors furnishing labor or materials.

**<u>Conclusion</u>**

Based on the foregoing discussion, it is

**ORDERED** that the Motion is **GRANTED** because the Plaintiff has not in the Complaint sufficiently pled a plausible claim for nondischargeability of its debt against the Debtor as a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" under 11 U.S.C. § 523(a)(4), and it is further

**ORDERED** that judgment on the pleadings is **GRANTED** in favor of the Debtor.

The Clerk is directed to serve a copy of this Order upon counsel for the Plaintiff, counsel for the Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**